Good morning, Your Honors. May it please the Court, Ryan Fraser, Federal Defenders of San Diego, on behalf of Edwin Ricardo Flores. I'll begin with an issue that infects both the conviction and the sentence. California Penal Code section 496 is overbroad as generic theft. Because unlike generic theft, 496 includes property obtained with consent of the owner, as in theft by false pretenses. That's confirmed by this Court's decision in Carrillo-Jaime, as well as California appellate authorities. Verdugo-Gonzalez doesn't call for any different conclusion, because Verdugo-Gonzalez did not address this overbreadth problem whatsoever. At most, it merely lurked in the record of Verdugo-Gonzalez. And in fact, there was no way that Verdugo-Gonzalez even could have considered the California decision in Fybush, because Fybush came four years later holding that 496 includes theft by false pretenses. So you think there's an intervening change in the law that renders Verdugo-Gonzalez no longer valid? Is that what you're arguing? Verdugo-Gonzalez is valid as to its holding with respect to the only argument of overbreadth that was made in that case. Well, it held that section 496A is categorically a theft. That statement is, of course, in the Court's opinion in Verdugo-Gonzalez. However, the opinion also reflects that the Petitioner's only argument of overbreadth was based on its reach of accessory after the fact liability. There is nothing in the opinion to reflect any consideration of the argument that Mr. Flores is presenting in this case. And the Court is correct. It is – Fybush does represent an intervening state authority that Flores-Cordero indicates is controlling in this case. In Flores-Cordero, resisting arrest under Arizona law was not a crime of violence, despite Estrada earlier holding that it was a crime of violence. And the Flores-Cordero opinion states, quoting here, on the basis of decisions of the Arizona courts that we must follow in ascertaining the scope of the Arizona criminal statute, we hold that Arizona resisting arrest is not categorically a crime of violence. So I do believe that Fybush completes that link between 496 and Carrillo-Jaime. Carrillo-Jaime, of course, addressed California Vehicle Code Section 10801, holding that statute overbroad because of its reach of property obtained with consent of the original owner, as in a theft by false pretenses. 496 happens to be a lesser included offense of 10801. So you commit 10801, you're guilty of 496. And you can commit 10801 without it being generic theft, so it follows as a matter of logic. You can be guilty of 496 without it being a generic theft. There's another flaw in the government's reading of Verdugo-Gonzalez, and that is if Verdugo-Gonzalez meant what the government claims it does, then it somehow must have silently overruled Carrillo-Jaime. But this can't be true because absolutely nothing in Verdugo-Gonzalez suggests intent to question any prior circuit precedent. Carrillo-Jaime in particular is not mentioned in Verdugo-Gonzalez. And yet the implication from the government's reading is inevitable because Carrillo-Jaime holds that if the state statute includes California theft by false pretenses, then it's overbroad as generic theft. And we know from Feibusch 496 does precisely that. The other deportation at issue was, as to the motion to dismiss, was the expedited removal of 2009. And as the government conceded below, it violated due process in the same ways as the expedited removal in Riavaca. Mr. Flores was not meaningfully informed of the charge against him. He didn't have an opportunity to review his sworn statement. He also possibly could have obtained withdrawal relief. Under Riavaca, this doesn't mean probable relief. It means he needs, quote, some evidentiary basis on which relief could have been granted. His overwhelming humanitarian equities established precisely that basis. He was supporting a family with a legitimate job that included his long-term partner in Los Angeles and three United States citizen children ages 5, 4, and 1. And the 4-year-old had autism, and Mr. Flores was actively ensuring that she received the necessary therapy. Fraud and other factors weighed against him in the expedited removal, but the ultimate question is equitable under the field manual. Would withdrawal be in the best interest of justice? In that analysis, it can't be overlooked, as Riavaca explained, that there is a compelling humanitarian interest in keeping families united. Riavaca had similar negative equities to Mr. Flores, with the exception of fraud, and relief was plausible for him because of that compelling humanitarian interest in keeping families united. Meanwhile, Riavaca had fewer United States children and United States citizen children, and there's not an indication that either of them had special needs. We know also as a practical matter that fraud is not disqualifying because of the statistical evidence and the comparator cases that are in the record in this case in which Riavaca allows the court to consider. Finally, an alternative basis to overturn the conviction is the District Court's 702 ruling, the harmfulness of which the government conceded by silence in its answering brief. Before trial, Mr. Flores submitted undisputed authorities establishing requirements in professional inked fingerprint examination for peer review, regular proficiency testing, and regular continuing education, none of which David Beers met. The District Court stated that the challenge was, quote, not an issue as a matter of law and refused to make any reliability findings as required by this court's en banc decision in the state of Barabin. District Court never addressed any of the issues that Mr. Flores raised as to the 702 admissibility of Beers' testimony, overruling the objection in conclusory fashion. That's an abuse of discretion under Barabin where the District Court needed to but did not, quote, assess or make findings regarding the scientific validity or methodology of the witness's proposed testimony. Also, it's an abuse of discretion under Hinkson for failure to identify and apply a legal rule. It's also an abuse of discretion under Hernandez-Mesa for failing to advance the court understood and was rejecting Mr. Flores' arguments in particular. As Hernandez-Mesa indicates, the District Court must show that it, quote, heard and understood the rejected argument. Nothing that the District Court said in ruling on Mr. Flores' objection to Beers' testimony indicates that. Unless the Court has any questions, I'll reserve my remaining time for rebuttal. Thank you, counsel. May it please the Court. Benjamin Hawley for the United States. I'll proceed in the same order as defense counsel. Beginning with the section 496 argument, this Court should continue to hold that it is an aggravated felony. The reason for that is that the elements of theft of receiving stolen property in California do not require proof of the elements that made regular theft overbroad under section 484. That is, so, for example, as the BIA held in Cardial Guerrero, it's not necessary to establish the elements of theft to demonstrate receiving stolen property. For theft, it matters how you obtain an item. That is, as the statute says, if you steal, take away, lead, false pretenses, extortion, how you obtain it is what determines if it's theft. Whereas for receiving stolen property, it just matters that it was stolen, and the defendant possesses it knowing that fact. Moreover — It doesn't say that it's without the consent of the owner? Without consent of the owner is the requirement of the generic theft, correct. But the Bell v. Fybush said that it included theft with consent of the owner. Right. And Bell v. Fybush was not an intervening change in the law, because it was just — Oh, it wasn't a change. Right. But it said that in California the law was different than what we had said. It was saying that section — It had been, always had been different from what we said. It was saying that consent, yes, correct, consent matters for theft. But what Verdugo-Gonzalez said is that the full range of conduct makes it a categorical theft offense. This Court, albeit on published decisions, has continued to say that post-Bell v. Fybush. The BIA has reached the same conclusion multiple times over as well. But — So what are the elements that have to be proven for knowing receipt of stolen property? That the property was stolen, that the defendant possessed it, and the defendant knew that it was stolen, the fact that it was stolen. How it was stolen or how it was obtained doesn't matter, isn't part of that proof. What do you mean it doesn't matter? If it's done with the consent of the owner. Right. So that doesn't matter for the receiving stolen property. The defendant in that situation doesn't need to know at all how it was obtained, consent or otherwise. The fact is that he just needs to know — It could be, it could be, the offense could consist of property taken with the consent of the owner. The underlying — It's still stolen, right? Right. I mean, I'm just thinking out loud because this, having to consider all these statues, I mean, so you're distinguishing this from generic theft, which I was under the assumption was incorporated into Section 496. So I'm distinguishing it in the sense that the elements aren't necessary, and perhaps I'm not explaining this well. What I mean is that for the regular theft under California 484, that can be done with consent. So now — so 484 would not be a categorical theft crime? Right. As this Court has held, correct. Okay. But 496 still is because it doesn't matter how that item was stolen or obtained. It just matters that the defendant know it, that it was stolen. Defendant doesn't have to know whether it was obtained with consent, whether it was stolen without the person even knowing. They just have to know the fact that it was stolen, and yet they continued to possess it. But importantly, even if this Court disagrees with that conclusion or the analysis, that goes to the sentencing, but the conviction for Mr. Flores still stands, and that's because there's the independent removal, the 2009 expedited removal. And there, the easiest path to affirmance is just looking at plausibility of relief. Relief here was not plausible. In fact, as the district court said, it was a virtual certainty that he would not — Mr. Flores would not have been granted withdrawal relief. The reason for that is that just the weight of the factors, not only the quantity, but the weight of the factors is against Mr. Flores, primarily that he used a false document, that he had an egregious criminal history, which goes to the public interest considerations. And he does have family equities, and the government doesn't want to downplay that, but those equities are not sufficient to overcome that significant weight of all of the other factors. It's very similar to Barajas-Alvarado. And as this Court knows, there are essentially two major cases in this realm for Barajas-Alvarado. The test is whether it would be plausible. Correct. And you weigh the factors as fraud being more important than the fact that he's being separated from his family and that he's supporting his children, one of whom has a serious ailment, and that's not as important as the fact that he used a fraudulent document to get in rather than climbing over the river and, yeah. And that's the way you would weigh it. Isn't it plausible that somebody with a different attitude about life than you are expressing? And I don't assume it's yours. I assume you're speaking for our kindly government rather than giving your own evaluation. That's right. Okay. But isn't it plausible that someone would have a different evaluation? And isn't that possible based on other cases in which there is often comparative cases in which withdrawal was allowed despite attempts to enter through fraud? So two responses to that, one more factual and one more doctrinal. Factually, the family was being broken up, as it were, regardless. This wasn't whether he was being going back to Mexico. It was whether it was done so as withdrawal voluntarily or whether he was being formally removed. Or how long it would be for it. Correct, because that has to do with the formal removal. And related to that, he, during this time, it's not as though he were providing for his family for the entire time and then is now leaving. Nearly half of the 12 years before this removal, he was in custody of one sort or another and had been returned to Mexico several times over. We don't know how long he was in Mexico each time, but at some point he was being removed. Doctrinally, I would point to the weighing that was done in Rey Evaca. So Rey Evaca, of course, found that relief was plausible, but there the thing that they said was a crucial consideration distinguishing Barajas-Alvarado was the fraud. And so that was an important consideration. It's not just me saying that it's important that it should be. The thing is they introduced, as I understand it, that 13.4 percent of fraudulent applications for admission were met with a grant of withdrawal. And so it's plausible that despite the fraud, you could get withdrawal. I don't disagree that fraud is automatically disqualifying. That's not our point. The problem with those statistics is we don't know any, that's the extent of what we know. We don't know any of the other facts about prior history, inadmissibility, even their family considerations. And so, for example, again, distinguishing Rey Evaca, in that case, he had the minimal criminal history and, importantly, multiple voluntary returns. So the Court held, well, there's no reason to believe that this, I believe it was the third or fourth return, is now suddenly the one that will stop being the voluntary, the withdrawal. Whereas here, Mr. Flores had never had that relief, never been granted that. In terms of the comparator cases the Court was referencing, those also had, first of all, less severe criminal history. Again, we don't know their family situation. We don't know if they had been given voluntary return before. We can distinguish it the other way, too. Did Mr. Rey Evaca have disabled children he was going to be separated from? Not that we know of, no. No. So, I mean, we can always find differences in two cases. Of course. But which is more important is the question. It's not unusual that they do.  It all depends on the factors. And that's also true with Mr. Rey Evaca. We could look at how many of the people who received withdrawals have permanently disabled children. And you'd find there was a difference there. It's certainly plausible that someone could weigh that factor as being more serious than the fact that you want to come here and you come with a false passport instead of by coming in completely illegally without even pretending. I don't really see that that's personal. I don't see that that's something that outweighs. It's the fact that you come in illegally, climbing over the river and over the mythical wall and you get here, and the other person comes and gets a false paper and gets here, that that's more important than the humanitarian conditions. Well, and we're not weighing just those two factors, and I don't want to leave the Court with that impression. But what I would also point to is, as I said, there are essentially the two lines of precedent or two camps, Barajas Alvarado and Rey Evaca. And here, this case is much more like Barajas Alvarado, including, as we put out in our brief, the humanitarian considerations there. I see I'm out of time, so unless the Court has any questions on that or the fingerprints, I'd be happy to submit. Okay. Thank you. I think it might be helpful to use your time basically on this first issue of whether the 496A and the question of what the effect of without consent of the owner. Thank you, Your Honor. So there are two points that the government mentioned here in its oral argument, which I saw also in the government's answering brief, both of which I think I have taken care of in the reply brief. But just to go back to that, the government's explanation here, one was it doesn't matter how the property was stolen. And so certainly I would agree with the government that there will be some 496 cases that constitute generic theft. It's just that that's not the issue. The issue is whether there can be 496 cases that are not generic theft. The second point was as to the use of the word stolen, comparing that with the definition that it's given generically as compared with the way that it's used in California law, same word with two different meanings, and that difference in meanings is critical. The difference is that generically stolen property is property that was taken without consent of the original owner, whereas with 496, in particular with theft by false pretenses, and Bell v. Fybush exemplifies it perfectly, Fybush obtained a loan on false pretenses that he had a trademark. He's the initial guy receiving it. He's liable for receipt of stolen property under California law, even though that's not stolen for generic purposes. Well, how do you respond to the argument that it doesn't matter how it was stolen, like it could be stolen by false pretenses or it could have been just outright, I'm taking your money? Yeah, so if it's I'm taking your money, that's not the type of case that I'm using to show over breadth. But if it's a situation like you had in Fybush where you obtain property through these false pretenses, and legally that's with consent for California law, that is clearly not generic theft. Carrillo-Jaime explains that. But is it generic receiving stolen property? Well, the government has not raised that issue, and I don't know of any basis to because the way that stolen property is considered for purposes of this analysis appears to be that it must have been gotten without consent of the owner. I think another way of seeing this, you take Carrillo-Jaime talking about 10-801. 496 is a lesser included of 10-801. 10-801 is over broad. That's Carrillo-Jaime. So if we're strictly in the categorical approach, categorically this over breadth exists. I think I'm just about out of time. Thank you very much. Thank you. Case disargued will be submitted.
judges: Reinhardt, Fernandez, Wardlaw